J. A32004/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NEVIN ABEDINAJ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CABRIYAH MARC, | : | |
| | : | |
| Appellee | : | No. 299 EDA 2016 |

Appeal from the Judgment Entered March 1, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: 140200758

BEFORE: DUBOW, RANSOM, AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 24, 2017**

Nevin Abedinaj ("Appellant") appeals from the March 1, 2016 Judgment entered by the Philadelphia County Court of Common Pleas following a jury trial. We affirm.

The relevant facts, as gleaned from the trial court's June 14, 2016 Opinion and the certified record, are as follows. On June 29, 2013, Cabriyah Marc ("Appellee") rear-ended Appellant while Appellant was stopped in a vehicle at a stop sign. The airbags did not deploy and the damage to Appellant's car totaled $690. Appellant did not go to the emergency room after the accident, but he took an Advil. Appellant testified that he had no

---

[*] Retired Senior Judge Assigned to the Superior Court.

medical issue before the accident, but he started experiencing pain in his neck and lower back immediately after the accident.

The pain worsened over time, and Appellant received physical therapy treatment for approximately 6 months. Appellant failed to follow up with an orthopedist regarding his neck pain, and an Electromyography ("EMG") procedure[1] in September 2013 showed no nerve damage to Appellant's neck. After complaining for the first time of arm pain, Appellant scheduled a second EMG procedure in March 2014, which showed radiculopathy at three different levels of his spine. Appellant failed to follow up after the second EMG.

Appellant received no treatment from January to October 2014. In October 2014, Appellant received a neck injection, but he again failed to follow up with the doctor.

The trial court summarized the procedural history as follows:

[Appellant] filed a complaint in this motor vehicle, limited tort matter on February 7, 2014 against [Appellee] in the Court of Common Pleas of Philadelphia, First Judicial District of Pennsylvania. On February 6, 2015[,] the parties went to compulsory arbitration, where the arbitrators found in favor of [Appellant] in the amount of $1,000. [Appellant] then filed an appeal for a trial *de novo*.

---

[1] Doctor Stepanuk testified at trial and described an EMG procedure in his deposition: "An EMG is a test where needles are placed, in this case, in the arm. The needles are moved back and forth. The patient is asked to contract their muscles, and this sends impulses that are picked up and converted into waves. The waves are then interpreted, and you can tell whether there is nerve damage or not." N.T. Stepanuk Deposition, 8/20/15, at 25-26.

A [j]ury [t]rial was held on November 19, 2015[,] and November 20, 2015. [Appellee] did not contest her negligence in causing the accident, therefore, the sole issues before the jury was whether the [Appellant] suffered serious impairment of a bodily function, and whether [Appellee's] negligence was the factual cause in bringing [Appellant's] harm.

[Appellant presented expert testimony that his future treatment would include cervical spine surgery for approximately $60,000 and other medication and treatment in the amount of $3,000 per year for five years.]

On November 11, 2015[,] the [j]ury returned a verdict. The [j]ury found that [Appellee's] negligence was a factual cause of [Appellant's] harm, and awarded [Appellant] $3,000 in past economic damages. The [j]ury also found that [Appellant] did not suffer a serious impairment of a bodily function [and did not award any noneconomic damages as a result.]

On November 30, 2015[,] [Appellant] filed a Motion for Post-Trial relief, requesting additur of $75,000 in future economic damages, or alternatively a new trial. This [c]ourt denied the Motion for Post-Trial relief on December 29, 2015[,] and [Appellant] appealed.

Trial Court Opinion, dated 6/14/16, at 1-2 (footnotes omitted).

Appellant filed a Notice of Appeal on January 7, 2016.[2] Both Appellant

and the trial court complied with Pa.R.A.P. 1925.

Appellant essentially presents the following two issues for our review:

---

[2] We note that Appellant filed his Notice of Appeal prematurely from the December 29, 2015 Order. *See PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1012 n.3 (Pa. Super. 2015) (an appeal of a final order in a civil case lies from the entry of judgment). However, the trial court entered Judgment on February 29, 2016, thus perfecting Appellant's appeal. *See* Pa.R.C.P. No. 227.4; *Prime Medica Associates. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009) ("A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction.").

1. Whether [Appellant] is entitled to a new trial when the jury verdict was patently against the weight of the uncontested evidence presented at trial[?]

2. Whether [Appellant] was entitled to a molding of the jury verdict upwards (i.e., Additur) when the jury verdict was patently against the weight of the uncontested evidence presented at trial[?]

Appellant's Brief at 5-7.[3]

In his first issue, Appellant claims that the jury's "verdict awarding past medical bills to Appellant but no future medical bills goes against the weight of the evidence and is a miscarriage of justice[.]"  Appellant's Brief at 12.  Appellant avers that his expert medical testimony was "uncontroverted" because Appellee did not present expert medical testimony.  **Id**. at 24.

When considering challenges to the weight of the evidence, we note that, "[i]t is well-settled in Pennsylvania that the weight of the evidence and the credibility of witnesses are issues for the jury who is free to believe some, all, or none of the evidence presented."  **Odato v. Fullen**, 848 A.2d 964, 966 (Pa. Super. 2004).

"A jury is entitled to believe all, part or none of the evidence presented. . . .  A jury can believe any part of a witness' testimony that they

---

[3] Appellant's "Statement of Questions Involved" includes 9 issues, including seven variations of the same issue.  Appellant essentially changes the sub-argument or premise underlying why he believes the verdict was shockingly low.  These variations do not comport with Appellant's argument sections, or Appellant's Rule 1925(b) Statement.  These claims are essentially re-phrased challenges to the weight of the evidence, and we will address them accordingly.

choose, and may disregard any portion of the testimony that they disbelieve." ***Martin v. Evans***, 711 A.2d 458, 463 (Pa. 1998) (citation and quotation omitted).

Where a jury has made credibility determinations regarding the testimony and evidence presented, those determinations are rarely overturned. ***Armbruster v. Horowitz***, 744 A.2d 285, 287 (Pa. Super. 1999). Further, in order to prevail on a challenge to the weight of the evidence, the verdict must be so "contrary to the evidence as to shock one's sense of justice[.]" ***Lanning v. West***, 803 A.2d 753, 765 (Pa. Super. 2002) (quotation and citation omitted).

"Moreover, a new trial will not be granted on the ground that the verdict was against the weight of the evidence where the evidence is conflicting and the fact-finder could have decided in favor of either party." ***Id***. at 766 (citation omitted).

The trial court cogently and comprehensively addressed Appellant's weight of the evidence claim in its Rule 1925(a) Opinion. Accordingly, with respect to this issue, we affirm on the basis of the trial court's well-reasoned Opinion. ***See*** Trial Court Opinion at 8-9 (concluding that: (1) the verdict was not against the weight of the evidence due to Appellant's failure to follow up with several doctors against their advice; (2) the injuries Appellant claimed were inconsistent; (3) Appellant was unlikely to seek or follow through with future medical treatment and surgery; and (4) the evidence

was not "uncontroverted" where Appellee cross-examined Appellant's expert witness despite not presenting competing expert testimony).

In his second issue, Appellant avers that he is entitled to "additur" and asks this court to "mold" the verdict from $3,000 to $78,000. Appellant's Brief at 12-13. Appellant contends that the verdict was shockingly low and a miscarriage of justice, and that the uncontroverted evidence supported $78,000 in damages. *Id*. Alternatively, Appellant seeks a new trial. *Id*. at 13.

"A verdict is set aside as inadequate when it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." ***Dranzo v. Winterhalter***, 577 A.2d 1349, 1352 (Pa. Super. 1990) (citation and quotation omitted). Further, "[i]f the verdict bears a reasonable resemblance to the damages proved, the appellate court will not disturb the verdict merely because the damages are less than the reviewing court might have awarded." ***Id***.

"To support the grant of a new trial for inadequacy of the damage award, the injustice of the verdict should stand forth like a beacon." ***Id***. (citation and quotation omitted). "[C]ourts generally have granted a new trial when the verdict award is inadequate[.]" ***Fiorenza v. Kohn***, 577 A.2d 1384, 1386 (Pa. Super. 1990).

The additional $75,000 Appellant seeks is for noneconomic damages. In order to recover noneconomic damages in a limited tort case, Appellant was required to prove a serious injury. **See** 75 Pa.C.S. § 1705(d); **Cadena v. Latch**, 78 A.3d 636, 639-40 (Pa. Super. 2013). The Motor Vehicle Financial Responsibility Law ("MVFRL") defines a "serious injury" as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702.

Here, the jury concluded that Appellant failed to prove a serious injury. Appellant essentially asks us to reverse the jury's conclusion and reward him for failing to meet his burden of demonstrating a serious injury. We decline to do so here. The verdict bears a reasonable resemblance to the damages proved, and, thus, we will not disturb the verdict.

The parties are instructed to attach a copy of the trial court's June 14, 2016 Opinion to all future filings.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2017

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**

**TRIAL DIVISION - CIVIL**

| | | |
|---|---|---|
| NEVIN ABEDINAJ,<br>*Plaintiff* | | February Term, 2014<br>No. 758 |
| v. | | |
| CABRIYAH MARC<br>*Defendant* | | 299 EDA 2016 |

## OPINION

Plaintiff, Nevin Abedinaj (also identified as Abdeinaj) appeals this Court's December 29, 2015 Order denying Plaintiff's request for Post-Trial Relief in the form of additur or alternatively a new trial.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Nevin Abdeinaj filed a complaint in this motor vehicle, limited tort matter on February 7, 2014 against Cabriyah Marc in the Court of Common Pleas of Philadelphia, First Judicial District of Pennsylvania. On February 6, 2015 the parties went to compulsory arbitration, where the arbitrators found in favor of Plaintiff in the amount of $1,000. Plaintiff then filed an appeal for a trial de novo.

A Jury Trial was held on November 19, 2015 and November 20, 2015. Defendant did not contest her negligence in causing the accident, therefore, the sole issues before the jury was

Abdeinaj Vs Marc-OPFLD



14020075800074

whether the Plaintiff suffered serious impairment of a bodily function[1], and whether Defendant's negligence was the factual cause in bringing Plaintiff's harm.

On November 11, 2015 the Jury returned a verdict. The Jury found that Defendant's negligence was a factual cause of Plaintiff's harm, and awarded Plaintiff $3,000 in past economic damages. The Jury also found that Plaintiff did not suffer a serious impairment of a bodily function.

On November 30, 2015 Plaintiff filed a Motion for Post-Trial relief, requesting additur of $75,000 in future economic damages, or alternatively a new trial. This Court denied the Motion for Post-Trial relief on December 29, 2015[2] and Plaintiff appealed.

## II.     FACTS

On June 29, 2013, Plaintiff was stopped at a stop sign in Cherry Hill, where he was rear-ended by the Defendant. NT 11-19-2015, p. 37. The damage to Plaintiff's car totaled $690. NT 11-19-2015, p. 46. The airbags did not deploy. NT 11-19-2015, p. 47. Wesley Atterly, a passenger in Defendant's vehicle, testified she was not jolted at all by the accident, and that the impact was "very minute" and "very minimal". NT 11-19-2015, p. 72.

Plaintiff testified he had no medical issues prior to the accident. NT 11-19-2015, p. 38. He testified there was some pain in his neck and lower back immediately after the accident, and that pain worsened over time. NT 11-19-2015, p.38-39.

---

[1] In a limited tort insurance case, Plaintiff can only recover non-economic damages if it is shown he suffered a "serious impairment of a bodily function" Long v. Mejia, 896 A.2d 596 (Pa. Super 2006).
[2] Plaintiff's motion contained no brief or memorandum of law and was in violation of Phila. Civ. R. 208.2(c). However the motion was denied on the merits.

Plaintiff testified his life changed after the accident because he became less involved with his children, he could not play soccer or lift as many things. NT 11-19-2015, p. 44. He became more limited at work, as he could not lift or carry heavy objections such as a case of water. NT 11-19-2015, p. 44.

Plaintiff did not go the emergency room after the accident, he went home and took an Advil. NT 11-19-2015, p. 39. Two Days after the accident Plaintiff visited a chiropractor at Spinal Care and began therapy which lasted approximately 6 months. NT 11-19-2015, p. 39-40, 49. At the time, Plaintiff had no pain in his arms. NT 11-19-2015, p. 50. Plaintiff's therapy involved massages, electrical stimulation, exercise, and injections on the left side of his neck. NT 11-19-2015, p. 40. He testified therapy provided relief from the pain, but that relief would only last a day or two. NT 11-19-2015, p. 40. His pain continued after therapy was finished NT 11-19-2015, p. 41.

On August 29, 2013, Plaintiff went to Pednal Rehab and saw orthopedist Dr. Palmerio to check his neck. NT 11-19-2015, p. 51. The records showed Plaintiff complained of neck, shoulder, mid and low back pain. NT 11-19-2015, p. 52. Dr. Palmerio recommended a follow up appointment four weeks later, however Plaintiff had no records or recollection that he followed up with Dr. Palmerio. NT 11-19-2015, p.53-54. Plaintiff's expert had no knowledge that Plaintiff ever followed up. Stepanuk Deposition, p. 75.

On September 4, 2013, Plaintiff underwent an EMG with Dr. Kosmorsky which showed no nerve damage to the neck. Stepanuk Deposition, p. 67. An EMG would be the best way to a diagnose radiculopathy, however it may not show up for 6 – 8 weeks. Stepanuk Deposition, p. 74. There was no recommendation for a follow-up EMG. Stepanuk Deposition, p. 78.

In December of 2013, Plaintiff saw Dr. Levenstein, and complained of pain in his left shoulder and back. NT 11-19-2015, p. 56. Plaintiff received an injection on the left side of his neck. NT 11-19-2015, p. 56. Plaintiff was discharged from chiropractic care around this time NT 11-19-2015, p. 56.

After consulting with his attorney, Plaintiff scheduled another EMG with Dr. Holding in March of 2014. NT 11-19-2015, p. 56-57. At this time, Plaintiff complained of pain in his left shoulder and neck, down to his elbow, as well as weakness in his left hand. NT 11-19-2015, p. 57. This was the first complaint of any pain in his arm to a medical professional NT 11-19-2015, p. 58.

Dr. Holding reported the second EMG, taken on March 4, 2014 showed radiculopathy at three different levels of his spine. Stepanuk Deposition, p. 85. Dr. Holding recommended a follow up appointment, and Plaintiff again failed to follow-up. Stepanuk Deposition, p. 84.

Plaintiff received no treatment from January to October of 2014. NT 11-19-2015, p. 58. Plaintiff testified he took prescription drugs for the pain, but provided no documentation of a prescription. NT 11-19-2015 58-59.

On October 17, 2014, at the request of his attorney, Plaintiff saw Dr. Slevin. NT 11-19-2015, p. 59. Dr. Slevin's report noted that Plaintiff complained of pain on the right side of his neck, and that Plaintiff received an injection on the right side of his neck. NT 11-19-2015, p. 59-60. Plaintiff could not say with certainty which side of his neck the injection was on. NT 11-19-2015, p. 60. Dr. Slevin recommended a follow visit two weeks later. NT 11-19-2015, p. 62. Plaintiff testified he did follow up, but had no records that showed he did. NT 11-19-2015, p. 62.

Plaintiff played the videotape Deposition from August 20, 2015, of their medical expert, Dr. Maxwell Stepanuk. Dr. Stepanuk is a board certified orthopedic surgeon. Stepanuk Deposition, p. 6. Dr. Stepanuk performed spinal surgeries for approximately 15 years, but at the time of the deposition his practice consisted solely of seeing patients, writing prescriptions and making recommendations. Stepanuk Deposition, p. 9.

On Cross, Dr. Stepanuk testified that 70% of his practice was "medical/legal work". Stepanuk Deposition, p. 56. He testified that his work was almost exclusively for Plaintiffs and that he had testified for the same Plaintiff's law firm 12 or 13 times that same year. Stepanuk Deposition, p. 56.

Dr. Stepanuk met with Plaintiff approximately a year and nine months after the accident. Stepanuk Deposition, p. 35. Dr. Stepanuk opined that Plaintiff suffered from "a cervical strain and sprain, cervical pain secondary to a disc bulge from C2 through C6, radiculopathies or nerve damage in both upper extremities, a lumbar strain and sprain, and a right lower extremity radiculopathy." Stepanuk Deposition, p. 18. Dr. Stepanuk opined that the disc bulges were caused by the car accident. Stepanuk Deposition, p. 61. He testified that Plaintiff's neck pain, back pain, disc bulges, and radicular symptoms were permanent. Stepanuk Deposition, p. 19.

Dr. Stepanuk relied on radiologist Joel Schwartz's MRI report to diagnose disc bulges. Stepanuk Deposition p. 58. He had a preference to review the MRI films personally, but was not provided with any MRI film in this instance. Stepanuk Deposition, p. 59. Dr. Palmerio read the same MRI as Dr. Stepanuk, and found it to be negative, and only listed soft tissue injuries. Stepanuk Deposition, p. 65.